Filed 7/1/15  Ocean Avenue LLC v. County of L.A. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| OCEAN AVENUE LLC, | B249722 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BC462619) |
| COUNTY OF LOS ANGELES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Joanne B. O'Donnell, Judge.  Affirmed.

Mark J. Saladino, County Counsel and Albert Ramseyer, Principal Deputy County Counsel, for Defendant and Appellant.

Ajalat, Polley, Ayoob & Matarese, Christopher J. Matarese, Richard J. Ayoob and Gregory R. Broege, for Plaintiff and Respondent.

_____

The County of Los Angeles (County) appeals from an order awarding Ocean Avenue, LLC (Ocean Avenue) $252,118.75 in attorney fees pursuant to Revenue and Taxation Code section 5152.[1] As a basis for the award, the trial court found that the Los Angeles County Tax Assessor (Assessor) intentionally ignored applicable tax rules as unconstitutional or otherwise invalid and proceeded to reassess Ocean Avenue's property without first seeking declaratory relief under section 538. According to the County, the law and public policy do not support an attorney fee award under the facts of this case. We find no error and affirm.

## FACTS[2]

**Background**

"Since 1999, the Fairmont Miramar Hotel (Hotel) has been owned by Ocean Avenue, an entity formed by Hotel Equity Fund VII, L.P. (Equity Fund). In March 2006, the Hotel was put up for sale. On July 7, 2006, Ocean Avenue entered into a contract (Initial Contract) to sell the Hotel to 101 Wilshire, LLC. On September 6, 2006, the parties signed a document in which they terminated the Initial Contract and related escrow. The same day, Equity Fund sold 100 percent of its membership/ownership interest in Ocean Avenue as follows: The Susan Lieberman Dell Separate Property Trust acquired a 49 percent interest; MSD Portfolio, L.P.—Investments (MSD Portfolio) acquired a 42.5 percent interest; and Miramar Hotel Investor, LLC (Hotel Investor LLC) acquired a 8.5 percent interest.

"Michael Dell directly owns 99 percent of MSD Portfolio. The other 1 percent is owned by MSD Capital. Because Michael Dell owns 99 percent of MSD Capital, he directly or indirectly owns 99.9 percent of MSD Portfolio. [Fn. omitted.] There is no

---

[1]    All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

[2]    We have borrowed the statement of facts from our prior opinion in *Ocean Avenue LLC v. County of Los Angeles* (June 3, 2014, B246499) [nonpub. opn.] (*Ocean Avenue I*).

2

dispute that Michael Dell effectively owns 42.5 percent of Ocean Avenue through MSD Portfolio.

"Hotel Investor LLC has four owners. They are Kingfish Investments V, LLC (Kingfish), Blue Fin Investments, LLC (Blue Fin), Michelangelo LLC (Michelangelo), and 645 Investments V, LLC (645 Investments). Blue Fin and Michelangelo each own a separate 36.5326 percent interest in Hotel Investor LLC. John Phelan owns a 66.67 percent profits interest in Blue Fin and a 6.67 percent capital interest. With respect to Michelangelo, Glen Fuhrman (Fuhrman) holds the exact same interests. MSD Capital owns a 33.3 percent profits interest and a 93.3 percent capital interest in both Blue Fin and Michelangelo. [Fn. omitted.]

"Melissa Sexton (Sexton), a staff member who worked for the Assessor, investigated and then analyzed whether the Hotel should be reassessed on the theory that one person had acquired more than a 50 percent ownership interest in Ocean Avenue such that there was a change in ownership for purposes of Proposition 13, the relevant tax statutes (§§ 60, 64), [fn. omitted] and the relevant tax rules (Cal. Code Regs., tit. 18, § 462.180).[3] Using a multiply-through test, she concluded that Michael Dell had only a 47.82 percent interest, and no one had an interest that exceeded 50 percent. Nonetheless, the Assessor reassessed the Hotel.

"Ocean Avenue appealed to the Los Angeles County Assessment Appeals Board (Board). The Board concluded there was a change of ownership based on any of the following theories: Equity Fund transferred all of its ownership rights in the Hotel; the Initial Contract between Equity Fund and 101 Wilshire, LLC was enforceable, so the Hotel transferred on July 7, 2006, by equitable conversion; or, Michael Dell controlled more than 50 percent of the capital invested in the purchase, plus he had a right to profits, including a preferred rate of return. The Board upheld the reassessment, noting that the

---

**3**    Regulations set forth in the Code of California Regulations, title 18 are referred to as Rules in this opinion. For example, the California Code of Regulations, title 18, section 462.180 is called Rule 462.180.

'revision of the original transaction . . . was only for the purpose of avoiding property tax reassessment. The real objective of the transaction was to transfer the Hotel's ownership in its entirety.'

"Subsequently, Ocean Avenue filed a complaint for a tax refund of $314,680.95 and alleged, inter alia, that because there had been no change in the Hotel's ownership, the Hotel could not lawfully be reassessed. The trial court entered a judgment in favor of Ocean Avenue." (*Ocean Avenue I, supra,* B246499, at pp. 2–4.) We affirmed the judgment in *Ocean Avenue I.*

**The Motion for Attorney Fees**

Ocean Avenue filed a motion for attorney fees under section 5152 on the ground that the County should have sought declaratory relief under section 538 before ignoring section 64 and Rule 462.180 and reassessing the Hotel.

In the trial court's tentative ruling, which it adopted as its final ruling, it stated in relevant part: "Fees are only awarded when the court finds the assessor affirmatively believes and argues that [a] [tax] rule is invalid, not where the [A]ssessor merely misunderstands the rule. . . . [¶] . . . The [trial court] determined that the assessment against [Ocean Avenue] was erroneous because there was no change in ownership triggering a re-assessment of the Hotel. As a result, the assessment violated [section] 64 and Rule 462.180 . . . . The issue raised by this motion is whether the [Assessor] made the decision to assess [Ocean Avenue] because [he] believed that the Code or the Rule were either unconstitutional or invalid or whether the [Assessor] was merely mistaken. [Citation.] . . . [¶] As the court explained in its statement of decision, [section] 64[, subdivisions] (a) and (c) and Rule 462.180 are directly applicable to the Dells' purchase of the Hotel through the purchase of the shares of Ocean Avenue, LLC in a trifurcated transaction. . . . Nevertheless, the gist of [the Assessor's] position, both before the Board and in the . . . trial, was that the [trial] court should not apply Section 64[, subdivision] (a) because the scenario it protects—that seized upon by the Dells—is 'too good to be true.' In particular, the [Assessor] made the following statements in its closing argument to the Board [in connection with Ocean Avenue's appeal]:

4

"They can do financial engineering in such a way as they think they can avoid the requirements of the California Constitution . . . . ;

"[T]here's a doctrine of tax law that I'd like to assert. It's called the doctrine of 'too good to be true.' The transaction is too good to be true. You pay taxes. You get reassessed when you buy property . . . . There is no reason in the world why the applicant in this case should not be similarly reassessed [in comparison to 'vanilla' property sales]. The tax system has to be fair to all . . . . [Citation.];

"[T]here's a concept here that's very important to recognize . . . the concept is called hierarchy of authority . . . . The constitutional provision controls over the statute and the rule. The statute probably controls over the rule. There's a hierarchy, but the highest point in hierarchy is that property is reassessed upon change of ownership. . . . ;

"[I]f mom and dad want to buy a house and the house is in the [name] of an LLC, mom could buy 50 percent and dad could buy 50 percent and we can avoid the change in ownership. If you ask me, that's too good to be true. That can't possibly be true. . . . [Expressing disbelief regarding Example 7 in the text of Rule 462.180];

"[T]his other idea—go to court—you know, 'Take us to court that would have been the right way to do this.' Our problem is with the rule. Our problem isn't really with the statute. Our problem is with how the facts of this case set up with regard to that rule, that statute, and most importantly with the Constitution requiring reassessment upon change in ownership. . . . ;

"The judicial trend here that I was pointing to was not in the Legislature it's in the Supreme Court cases. It says, 'Look at the overarching framework. The overarching framework is ". . . reassessment upon changing ownership."' [Citation.]

"In short, [the Assessor] advanced the Constitution and the 'too good to be true' doctrine as an alternative to following the plain language of the statute. While [the Assessor] does not expressly charge that the statute and the rule are unconstitutional or invalid, [his] position is transparent. [The Assessor] would not have urged the court to disregard the statute if [he] did not believe it was unconstitutional or otherwise invalid. Accordingly, [the Assessor] was required to bring a declaratory relief action, not merely

tax [Ocean Avenue] and force it to file suit. Because [the Assessor] did not do so, [Ocean Avenue, as the] prevailing Plaintiff[,] is entitled to its attorney's fees under section 5152."

The trial court awarded attorney fees in the amount of $252,118.75.

This timely appeal followed.

## DISCUSSION

According to the County, section 538 requires an Assessor to file a declaratory relief action when he challenges a specific provision of law, but not when he challenges the overall application of California's change in ownership provisions; the Assessor's determination that the Hotel incurred a Proposition 13 reassessment was made in good faith; and an award of attorney fees in this case violates public policy and therefore should not be upheld.

We disagree on all counts.

## I. Standard of Review.

To the extent the County challenges the applicability of section 538, i.e., whether the Assessor was required to file a declaratory relief action before reassessing the Hotel, and the impact of public policy on the reach of section 5152, the County presents questions of law subject to de novo review. (*Bean v. Pacific Coast Elevator Corp* (2015) 234 Cal.App.4th 1423, 1427.)

By arguing that the Assessor acted in good faith, the County challenges the trial court's factual finding that the Assessor reassessed the Hotel because he believed section 64 and Rule 462.180 were unconstitutional or otherwise invalid. When reviewing factual findings, we apply the substantial evidence test. (*Bertoli v. City of Sebastopol* (2015) 233 Cal.App.4th 353, 364; *Bui v. Nguyen* (2014) 230 Cal.App.4th 1357, 1367; *Yassin v. Solis* (2010) 184 Cal.App.4th 524, 529.)

Regarding the factual findings, the County would have us employ de novo review on the theory that this case involves mixed questions of fact and law, and that the questions presented are predominantly legal. It relies on *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888, which stated: "Mixed questions

6

of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied. If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently. [Citation.]" The problem with the County's position is that the issues here depend upon what the Assessor believed, and the pertinent inquiry requires application of experience with human affairs.

**II. Section 538, Subdivision (a) was Applicable.**

In relevant part, section 538, subdivision (a) provides: "If the assessor believes that a specific provision of the Constitution of the State of California, of [Division 1 of the Revenue & Taxation Code], or of a rule or regulation of the [B]oard is unconstitutional or invalid, and as a result thereof concludes that property should be assessed in a manner contrary to such provision, . . . the assessor shall, in lieu of making such an assessment, bring an action for declaratory relief against the board under Section 1060 of the Code of Civil Procedure."

In the County's view, it was not required to file a declaratory relief action because it challenged "the overall application of California's change in ownership provisions to the circumstances of this case" rather than "a specific provision of law[.]" To support this argument, it cites *Star-Kist Foods, Inc. v. County of Los Angeles* (1986) 42 Cal.3d 1, 10, which stated that section 538 "requires an assessor who believes a tax measure to be unconstitutional or otherwise invalid to seek declaratory relief to that effect, instead of simply imposing an assessment contrary to the questioned law." Further, it cites legislative history indicating that the purpose of section 538 "is to provide a mechanism to obtain a judicial resolution to assessors' legal objections to a statute or constitutional provision without requiring hundreds or thousands of taxpayers to appeal and file suits for refunds." (Assem. Rev. & Tax. Com., Property Tax Assessment Procedure, Assem. Bill No. 3669 (1977-1978 Reg. Sess.) as amended May 15, 1978, comment 1.)

7

We reject the County's argument for three reasons.

First, the trial court found that the County challenged section 64 and Rule 462.180 in front of the Board as well as at trial. Undeniably, then, the trial court found that the County challenged a specific provision of the Revenue & Taxation Code as well as a specific regulation. The County has not argued that the trial court's factual finding was unsupported by substantial evidence, and we therefore have no basis to disregard that factual finding. (*Tan v. California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 811 [arguments not made are deemed waived]; *Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1206, fn. 11 ["It is not our responsibility to develop an appellant's argument"].)

Second, the County failed to pinpoint any location in the record establishing that it challenged the overall application of California's change in ownership provisions to the circumstances of this case rather than a specific provision of law. It bears reminding the County that a "'reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment.' [Citations.] It is the duty of counsel to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal. [Citation.] If no citation 'is furnished on a particular point, the court may treat it as waived.' [Citation.]" (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.)

Third, a challenge to the overall application of California's change in ownership provisions would, in fact, encompass challenges to the applicability of specific statutes and regulations. In other words, the County's argument is a semantic gambit that carries no legal substance.

Based on the foregoing consideration, we are required to uphold the trial court's determination that section 538, subdivision (a) applied.

8

**III. Substantial Evidence Supports the Finding that the Assessor Acted Pursuant to a Belief that Section 64 and Rule 462.180 were Unconstitutional or Otherwise Invalid.**

When awarding attorney fees under section 5152, a trial court is required to make a factual finding that a flawed assessment was based on the Assessor's belief that a tax law was unconstitutional or invalid rather than a misunderstanding of the law. (*Phillips Petroleum Co. v. County of Lake* (1993) 15 Cal.App.4th 180, 197–198 ["Sections 5152 and 538 require a cognitive decision on the part of the assessor that a particular provision, rule or regulation is unconstitutional or invalid either on its face or as applied to the circumstances in the case"].)

Below, the trial court found that statements made by the Assessor during closing argument in front of the Board established that the Assessor ignored section 64 and Rule 462.180 because he believed they were unconstitutional or otherwise invalid. To avoid the consequences of that finding, i.e., the attorney fee award, the County's task on appeal is to show that the finding lacks the support of substantial evidence. Under the substantial evidence test, """"We view the evidence most favorably to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. [Citation.] Substantial evidence is evidence of ponderable legal significance, reasonable, credible and of solid value. [Citation.]"""" (*Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 366.)

On appeal, the County makes no attempt to tailor its argument to the substantial evidence test. Rather, it argues the issues anew. Moreover, in arguing the issues anew, it provides no citations to the record. In other words, the County offers argument about what motivated the Assessor when he reassessed the Hotel, but the County has not adverted to any evidence of his motivation. We find no merit to the County's argument. (*People v. Foss* (2007) 155 Cal.App.4th 113, 126 ["'When an appellant fails to apply the appropriate standard of review, the argument lacks legal force'"]; *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 ["When an appellant fails to raise a

9

point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)[4]

## IV. Public Policy Does not Bar the Application of Section 5152.

The County contends that public policy bars the application of section 5152 to the facts of this case because the Assessor acted based on a good faith belief that California's overall tax policy dictated that the Hotel be reassessed despite section 64 and Rule 462.180. In our view, the County has missed the point. The very fact that the Assessor challenged section 64 and Rule 462.180 without first filing a declaratory relief action establishes bad faith. This is because the Assessor was not authorized to make the policy decision to ignore controlling legal provisions. Rather, he was required to follow the State Board of Equalization's regulations, including Rule 462.180. (*Industrial Indemnity Co. v. City and County of San Francisco* (1990) 218 Cal.App.3d 999, 1006 [local assessors must follow regulations].) Thus, we need not determine whether section 5152 applies if the Assessor acted in good faith.

In addition, the County's argument fails because it cited no law permitting a court to use public policy as a means to disregard a statute.

---

[4] Though unclear, the County appears to challenge the sufficiency of the evidence in a circuitous manner in its reply brief by suggesting that the transcript excerpts cited by the trial court in its ruling do not establish that the Assessor challenged the applicability of section 64. This vague and untimely argument is waived. (*Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740, 1755, fn. 1 ["'A point not presented in a party's opening brief is deemed to have been abandoned or waived'"].) Moreover, the argument is unavailing because the inferences in the transcript excerpts cited by the trial court suggest a challenge to section 64, the County ignored the rest of the record, and it ignored the Assessor's attack on the validity of Rule 462.180.

10

**DISPOSITION**

The order is affirmed.

Ocean Avenue is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT


11